1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   OLIVIA D.,

11                        Plaintiff,            CASE NO. 3:23-CV-5035-DWC

12          v.                                  ORDER REVERSING AND
                                                REMANDING DEFENDANT'S
13   COMMISSIONER OF SOCIAL                     DECISION TO DENY BENEFITS
     SECURITY,
14
                          Defendant.
15

16
       Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of Defendant's
17
18 denial of her application for disability insurance benefits ("DIB"). [1] After considering the record,

   the Court concludes the Administrative Law Judge ("ALJ") erred in his assessment of medical
19
   opinion evidence from Tracy W. Sax, M.D. Had the ALJ properly considered Dr. Sax's opinion,
20
   the residual functional capacity ("RFC") may have included additional limitations. The ALJ's
21
   error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence
22

23   _____

24      [1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties
     have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

1  four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further

2  proceedings consistent with this Order.

3  **I.  Factual and Procedural History**

4  Plaintiff filed an application for DIB on April 16, 2020, alleging disability beginning

5  February 6, 2020. *See* Dkt. 7, Administrative Record ("AR") 257, 260. Her application was

6  denied at the initial level and on reconsideration. AR 74, 87, 120, 128. Plaintiff requested a

7  hearing before an ALJ, which was held on November 23, 2021. AR 35, 135. Plaintiff was

8  represented by counsel at the hearing. AR 35. The ALJ issued an unfavorable decision on

9  December 21, 2021, and the Appeals Council denied Plaintiff's request for review. AR 1, 12–29.

10 Plaintiff appealed to this Court. Dkt. 1.

11 **II.  Standard of Review**

12 When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

13 may set aside the denial of social security benefits if the ALJ's findings are based on legal error

14 or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

15 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Evidence is

16 "substantial" when it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153

17 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept

18 as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

19 229 (1938)).

20 "[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical

21 testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)

22 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the

23 evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that

24

1   must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v.*

2   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning

3   behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*,

4   806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary

5   because [the Court] can affirm the agency's decision to deny benefits only on the grounds

6   invoked by the agency." *Id.*

7        "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

8   674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

9   Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

10  the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

11  1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

12  **III.    Discussion**

13       Plaintiff contends the ALJ erred in rejecting her subjective symptom testimony regarding

14  her migraine headaches and in his consideration of certain medical opinion evidence. *See* Dkts.

15  9, 18.

16       A.  *Medical Opinion Evidence*

17       Plaintiff argues the ALJ erred in rejecting medical opinion evidence from Dr. Tracy W.

18  Sax, Plaintiff's treating neurologist. Dkt. 9 at 11–12.

19            1.  Medical Opinion Evidence Standard

20       The regulations regarding the evaluation of medical opinion evidence have been amended

21  for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of

22  Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff filed

23  her claim after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

1    Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight,

2    including controlling weight, to any medical opinion(s) or prior administrative medical

3    finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical

4    opinion or prior administrative medical finding in the record and evaluate the persuasiveness of

5    each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

6         The two most important factors affecting an ALJ's determination of persuasiveness are

7    the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a).

8    "Supportability means the extent to which a medical source supports the medical opinion by

9    explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–

10   92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1).

11   An opinion is more "supportable," and thus more persuasive, when the source provides more

12   relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R.

13   §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion

14   is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the

15   claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. §

16   416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency

17   factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§

18   404.1520c(b)(2), 416.920c(b)(2).

19              2.   Analysis

20        On August 25, 2021, Tracy W. Sax, M.D., completed a form regarding the severity of

21   Plaintiff's impairments and resulting limitations. AR 513–15. Dr. Sax had treated Plaintiff since

22   April 14, 2020. AR 513. She indicated Plaintiff had been diagnosed with chronic migraines that

23   involved pain on both sides of the head, nausea, and sensitivity to smell and light. AR 513–14.

24

1   She noted Plaintiff's headaches typically lasted one to two days, but she had more migraine days

2   when exposed to bright light or smells. AR 514.

3          Dr. Sax opined Plaintiff's condition impacted her ability to work because "she was

4   unable to maintain active employment due to constant migraine triggers at work." AR 514–15.

5   She estimated Plaintiff's attention and concentration would be impaired at work for twenty

6   percent of a standard work week, and she would expect Plaintiff to miss sixteen hours or more

7   per month because of her impairment, symptoms, or medications and their side effects. AR 515.

8   Dr. Sax wrote Plaintiff "is not able to tolerate being in an office [with] bright lights/smells as this

9   frequently triggered migraine." *Id.* She indicated Plaintiff was currently prescribed Emgality and

10  listed the prior medications that Plaintiff had been prescribed for her headaches, noting the side

11  effects she experienced from each one: Topamax (nausea), Nortriptyline (drowsiness), Ubrelvy

12  (drowsiness), Maxalt (no benefit), and Sumatriptan (muscle pain). *Id.*

13         The ALJ found Dr. Sax's opinion to be unpersuasive. AR 25. He stated the opinion was

14  unsupported and inconsistent with the medical record. *Id.* The ALJ listed two main reasons for

15  the finding of inconsistency. *Id.* First, he found Dr. Sax's opinion overestimated the limiting

16  effect of Plaintiff's severe impairment. *Id.* Specifically, he stated the record did not contain

17  support for "the off-tasks and absenteeism limitations," reflected conservative treatment, and

18  showed that Plaintiff's symptoms improved with appropriate treatment. *Id.* Second, the ALJ

19  found Dr. Sax's opinion inconsistent with Plaintiff's "fairly robust" activities of daily living

20  ("ADLs"). *Id.*

21         The ALJ cited to two pages of the record in support of his statement that Plaintiff's

22  symptoms had improved with appropriate treatment. *Id.* In a clinical note dated February 23,

23  2021, Plaintiff's primary care physician wrote: "Migraine headaches are still frequent[ ] but have

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

1    responded at least somewhat to [E]mgality and [U]brelvy." AR 25, 505. The ALJ also cited to a

2    June 2, 2021, neurology progress note from Dr. Sax that summarized Plaintiff's medication

3    history for chronic migraine: "She has done well on Emgality and will continue. She responded

4    well to Ubrelvy but it was not approved by insurance. She has not noted much benefit with

5    Maxalt and had muscle pain when she took Sumatriptan in the past. . . . She has tried and not

6    responded to Topamax and had side effects with Nortriptyline." AR 25, 496.

7        Although these notes reflect some improvement in Plaintiff's symptoms with medication,

8    the ALJ has not explained why they are inconsistent with Dr. Sax's opinion. The record shows

9    that Plaintiff reported "very frequent," "nearly daily" migraines when she first began seeing Dr.

10   Sax, with only five to six "good days" per month despite her current medication. AR 380–81,

11   391–92. Dr. Sax recommended a trial of Emgality for migraine prevention. AR 380. After one

12   year on Emgality, Dr. Sax noted Plaintiff's "[h]eadaches seemed to be a bit better during cool

13   weather," with eight to nine migraines per month. AR 497. She indicated Plaintiff's migraines

14   increased when the weather was warmer but were "not at baseline of 24-25 migraines per month

15   prior to Emgality." *Id.*

16       Even after improving with treatment, Plaintiff still reported at least eight to nine

17   migraines per month. Plaintiff testified the rescue medication she took for migraines made her

18   "very groggy," so even after her headache subsided, she would need to "sit in a cold, dark room"

19   and would be "out for the rest of the day." AR 39–40. On the whole, the record is consistent with

20   Dr. Sax's opinion that Plaintiff would miss at least sixteen hours per month of work due to her

21   impairments. The ALJ's finding to the contrary is not supported by substantial evidence.

22       The ALJ's finding that Dr. Sax's opinion is inconsistent with Plaintiff's ADLs is also not

23   supported by substantial evidence. The ALJ cited to Plaintiff's function report dated February 5,

24

1    2021, in support of his statement that Plaintiff's ADLs were "fairly robust." AR 25. When she is

2    migraine-free, Plaintiff stated she is able to drive, handle personal care, prepare simple meals,

3    care for her dogs, and shop for groceries once per week, provided she does not "run into a puff of

4    strong perfume," which can trigger a migraine. AR 334–37. However, on a typical "migraine

5    day," she wrote she gets up to take medicine, sleeps for four to six more hours, tries to eat, then

6    lies still to avoid nausea. AR 334. When she has a migraine, she needs to "be in a cold dark

7    room" because the migraines cause her to be sensitive to light and smell. AR 333, 341. She

8    stated her migraines could last up to five days, and that she typically had fifteen to twenty

9    migraine days per month. AR 333.

10          This function report does not support the ALJ's finding that Plaintiff's ADLs are

11   inconsistent with Dr. Sax's opinion. Although Plaintiff's ADLs may be "fairly robust" on

12   migraine-free days, she stated she is migraine-free less than half of the time. Plaintiff spends her

13   migraine days sleeping or lying still in a dark room. This is consistent with Dr. Sax's opinion

14   that Plaintiff could be expected to miss more than sixteen hours of work per month due to her

15   impairments.

16          The Commissioner argues the ALJ properly found Dr. Sax's opinion unpersuasive

17   because "the only support for the frequency and duration of Plaintiff's migraines was her own

18   subjective statements, which were supportably discounted by the ALJ." Dkt. 17 at 10. However,

19   the ALJ's decision does not state he discounted Dr. Sax's opinion because it was based on

20   Plaintiff's subjective symptom reporting. "Long-standing principles of administrative law require

21   us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—

22   not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."

23   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citing *SEC v.*

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1   *Chenery Corp.*, 332 U.S. 194, 196 (1947)). The Court cannot engage in such "*post hoc*

2   rationalizations*" to supply reasoning not specified by the ALJ in his decision.

3       As written, the ALJ's reasons for finding Dr. Sax's opinion inconsistent with the medical

4   record are not supported by substantial evidence. Thus, the ALJ erred. This error was not

5   harmless. The ALJ found that Plaintiff had the RFC to perform light work with certain specified

6   limitations. AR 20. Had the ALJ properly considered Dr. Sax's opinion, the RFC may have

7   included additional limitations.

8       B.  *Subjective Symptom Testimony*

9       Plaintiff also argues the ALJ erred by rejecting her subjective symptom testimony

10   regarding her migraine headaches. Dkt. 9 at 3. The Court concludes the ALJ committed harmful

11   error in assessing the medical opinion evidence and must re-evaluate all the medical evidence on

12   remand. Because Plaintiff may be able to present new evidence and new testimony on remand

13   and because the ALJ's reconsideration of the medical evidence may impact the assessment of

14   Plaintiff's subjective testimony, the ALJ must reconsider Plaintiff's testimony on remand.

15       C.  *Remedy*

16       Plaintiff requests remand for immediate calculation and payment of benefits. Dkt. 9 at 10.

17   The Court may remand a case "either for additional evidence and findings or to award benefits."

18   *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an

19   ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for

20   additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)

21   (quoting *INS v. Ventura*, 537 U.S. 12, 16, (2002)). However, the Ninth Circuit created a "test for

22   determining when evidence should be credited and an immediate award of benefits directed[.]"

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

1  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded

2  where:

3  (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

6  *Smolen*, 80 F.3d at 1292.

7  The Court has determined the ALJ must re-evaluate the medical opinion evidence and

8  Plaintiff's subjective symptom testimony. Further, based on the above identified errors, issues

9  remain that must be resolved concerning Plaintiff's functional capabilities and her ability to

10  perform other jobs existing in significant numbers in the national economy. Therefore, remand

11  for further administrative proceedings is appropriate.

12  **IV.     Conclusion**

13  Based on the foregoing reasons, the Court hereby finds that the ALJ improperly

14  concluded Plaintiff was not disabled beginning February 6, 2020. Accordingly, Defendant's

15  decision to deny benefits is reversed and this matter is remanded for further administrative

16  proceedings in accordance with the findings contained herein.

17  Dated this 22nd day of December, 2023.

18

19  David W. Christel
    Chief United States Magistrate Judge

20

21

22

23

24